IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SERGIO ANDRADE MARTINEZ                                    PLAINTIFF

          v.                         Civil No.  12-5163

OFFICER FIELDS; and
MAJOR RANDALL DENZER                                       DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights claim filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff

proceeds *pro se* and *in forma pauperis*.  Both sides have made a jury demand.

Plaintiff is currently incarcerated in the Cummins Unit of the Arkansas Department of

Correction.  The events at issue in this case occurred while Plaintiff was incarcerated in the

Washington County Detention Center (WCDC).  Plaintiff maintains that Officer Fields used

excessive force against him.  Plaintiff also names Major Randall Denzer as a Defendant.

Plaintiff maintains Major Denzer knew of Officer Fields' propensity to use excessive force and

did nothing to protect inmates from him.

The case is currently before the Court on Defendants' motion for summary judgment

(Doc. 32).  A hearing was held on November 22, 2013, to allow Plaintiff to respond to the

motion orally.  At the conclusion of the hearing, Defendants were given thirty days to submit any

use of force reports involving Officer Fields.  Defendants were also allowed to file a reply brief.

The reports have been received and the brief  (Doc. 60) filed.  The summary judgment motion

is now ready for decision.

-1-

**1.  Applicable Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

**2.  The Hearing**

Plaintiff's first language is Spanish.  According to him, he speaks little or no English.  His pleadings were prepared by someone else with the use of an interpreter.  He was provided with an interpreter for the hearing.

Plaintiff was arrested and booked into the WCDC on March 25, 2012.  *Defendants' Exhibit* 1-A.  He was held on pending charges and was a pretrial detainee.  Plaintiff testified that jail personnel "never" understood what he was saying.  Plaintiff testified that when he was booked in he was not given an opportunity to call for an attorney.

-2-

Plaintiff testified that he was initially held in a private cell but then was moved to general population.  Once there, he looked for someone who spoke Spanish in an effort to get help so that he could get an attorney.  On April 3rd, an inmate Plaintiff spoke with told him to push the intercom button to get help.  Plaintiff testified he did not know what the button was for.

When Plaintiff pushed the button, it was answered in English.  Plaintiff testified he asked for help but the person did not understand.  Plaintiff testified that when a minute went by and no one came that he pushed the button again.  This time Officer Fields came to the pod door and talked to Plaintiff in English.  Plaintiff testified he did not understand what Officer Fields was saying.  However, Plaintiff did believe Officer Fields was talking about the button.  Plaintiff testified he told Officer Fields that he wanted someone to get his papers.

Plaintiff testified that Officer Fields grabbed him and took him out of the pod.  Plaintiff stated that once out of the pod,he was thrown on to the floor; his arms were grabbed and moved towards his back in an effort to handcuff him.  Plaintiff testified he was pushed towards the wall. Another officer arrived and put his foot on Plaintiff's head forcing him towards the wall. Plaintiff testified he was then taken to another pod where there were empty cells.

Plaintiff could not understand what Officer Fields was saying. Plaintiff testified that it was painful and his arm cracked.  In fact, Plaintiff testified the pain was so bad that he urinated. Plaintiff's back and arm hurt all that day.

Plaintiff testified that he was begging to see a doctor.  Plaintiff was seen by a nurse after approximately two hours.  The nurse told him that there was nothing wrong and that he was just pretending. However, Plaintiff testified that he was taken to the hospital later that day and x-rays and a CT scan were done.  He was seen by a doctor who spoke Spanish.  Plaintiff testified he told his arm had been dislocated.  The doctor prescribed medication and gave him a splint to

-3-

immobilize his shoulder.  Plaintiff testified that his shoulder has never healed and still hurts when he moves it.

Plaintiff testified that when he returned to the detention center on April 3rd, he was put in a cell in which he was locked down for twenty-three hours a day.  He testified it was a small cell with only a bed and a stool.  He was in the cell by himself.  He was allowed out of the cell one hour a day to bathe or talk on the phone.

Detention center personnel took his mat and blanket away at 5 or 6 am.  The items were not brought back until 9 or 10 pm.  Plaintiff testified that as a result of the mat being taken away daily he suffered.  Plaintiff testified he used newspapers as a blanket.

Plaintiff indicated that he did not have access to any writing paper and was unable to communicate with the officers.  Plaintiff testified that as a result, he was unable to complain to anyone about Officer Fields' conduct.

Plaintiff testified that he did not know about the grievance procedure.  He indicated he was not provided with any information about the rules at the detention center.  After he had been incarcerated longer, Plaintiff indicated he was told how to complain.  Plaintiff testified it was months after the April 3rd incident that he learned about the grievance procedure and submitted grievances.

Plaintiff testified there was an officer who spoke Spanish but he did not like it when Plaintiff spoke Spanish to him.  Plaintiff stated that the detention center has a large Hispanic population.  In his opinion, there was a lot of injustice.

Plaintiff has submitted the medical records of Washington Regional Medical Center from his April 3rd visit there.  *Plaintiff's Exhibit* 1.  He was diagnosed with a right clavicle fracture-closed, cervical strain (whip lash), head contusion, and thoracic strain (T-spine strain).  *Id.* at pg.

-4-

4.  Plaintiff was directed to take Ibuprofen or Tylenol for pain, and was to be rechecked by an orthopedic surgeon, Dr. Tom Coker.  *Id.* at pg. 5.

Plaintiff also submitted the clinical note from his visit to Dr. Coker on April 10th.  *Plff's Ex.* 2.  Dr. Coker noted that Plaintiff had "decent range of motion of the shoulder" and full range of motion of the elbow, wrist, and hand.  *Id.*  Plaintiff was to remain in a figure-of-eight splint for two or three weeks and then start physical therapy.  *Id.*  If his shoulder was still hurting in two to three months, Dr. Coker indicated he would consider changing Plaintiff's treatment.  *Id.*

Plaintiff was seen by the jail doctor on April10th and June 26th.  *Plff's Ex.* 3.  On both occasions he was complaining of pain in his right shoulder.  *Id.* at pg. 2.  On the April 10th visit, Plaintiff was prescribed Elavil in addition to the 800 milligrams of Tylenol he was taking four times a day.  *Id.*  On the June 26th visit, Plaintiff was prescribed Ibuprofen 600 mg. three times a day as needed for pain.  *Id.* at pg. 1.  After a month, Plaintiff was to discontinue use of the shoulder brace.  *Id.*

Defendant has submitted a copy of the WCDC's use of force policy.  *Defts' Ex.* 1-B.  It calls for a continuum of levels of force to be used beginning with verbal persuasion and ending with lethal force.  *Id.*  The policy advises officers that "[o]nly that amount of physical force necessary to maintain or regain control of a detainee shall be used by the staff" of WCDC.  *Id*

Defendants have also supplied the Court with surveillance camera videos of the incident in question.  *Defts' Ex.* 1-D.  The first video (no audio) footage is from inside the day-room of the pod Plaintiff was assigned to.  It shows the Plaintiff standing near the exit door by the intercom button.  Plaintiff pushes the button, waits a period of time, and pushes the button a second time.  The pod door opens and Officer Fields steps part way into the pod and is seen talking to the Plaintiff.

-5-

Officer Fields appears to be talking to the Plaintiff about the intercom button because he is gesturing to it. Plaintiff reaches up and pushes the button again. When Plaintiff starts to push the button yet again, Officer Fields reaches over and grabs the Plaintiff's right arm. Officer Fields attempts to pull Plaintiff out the door and into the hallway. Plaintiff braces himself first with his left arm against the wall, then with his legs, and finally grabs onto the door frame. Once in the hallway, Plaintiff is quickly taken to the floor. At this point, Officer Fields has his back to the pod door where numerous inmates are in the day-room.

The second video clip is taken from the control area. It shows Officer Fields back as he appears to be attempting to handcuff the Plaintiff. Another officer, Deputy Caudle, quickly comes up. Deputy Caudle, through application of his weight, appears to be trying to hold the Plaintiff's upper body still. After some difficulty, Officer Fields gets both Plaintiff's hands behind his back and handcuffs are applied. Plaintiff is then pulled up to his feet and escorted out. Neither officer is seen striking the Plaintiff at any time during the video.

At the Court's request, Defendants have provided all use of force reports involving Officer Fields dated from November 22, 2011, to November 19, 2013. These reports have been marked as Court's Exhibit 1. A total of thirty reports were submitted. Of these, twenty-nine, including the April 3rd incident, did not result in any grievances being filed.

### 3.  Discussion

Defendants first maintain they are entitled to summary judgment in their favor because Plaintiff failed to exhaust the available administrative remedies. Second, Defendants maintain that Officer Fields used only the minimal amount of force necessary to achieve a legitimate objective. Third, Defendants contend they are entitled to the protection of qualified immunity. Finally, Defendants argue there is simply no evidence of an unconstitutional policy, custom, or

-6-

AO72A
(Rev. 8/82)

practice that was the moving factor behind the alleged violations.  As such, Defendants maintain

they are entitled to summary judgment on the official capacity claims.

### A.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), mandates exhaustion

of available administrative remedies before an inmate files suit.  Section 1997e(a) provides:

"[n]o action shall be brought with respect to prison conditions under section 1983 of this title,

or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are exhausted."

Exhaustion is mandatory.  Porter v. Nussle, 534 U.S. 516, 524-25 (2002).  In Jones v.

Bock, 549 U.S. 199 (2007), the Supreme Court concluded that "to properly exhaust

administrative remedies prisoners must complete the administrative review process in

accordance with the applicable procedural rules."  *Id.* at 218 (internal quotation marks and

citation omitted).  The Court stated that the "level of detail necessary in a grievance to comply

with the grievance procedures will vary from system to system and claim to claim, but it is the

prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id.*

"[F]ailure to exhaust available administrative remedies is an affirmative defense, not a matter

of subject matter jurisdiction."  Lenz v. Wade, 490 F.3d 991, 993 n. 2 (8th Cir. 2007).

The Supreme Court in Booth v. Churner, 532 U.S. 731, 738-39 (2001) held that

"exhaustion is required where administrative remedies are available even if the available

administrative remedies do not provide the precise, or full, relief sought."  Walker v. Maschner,

270 F.3d 573, 577 (8th Cir. 2001).   The exhaustion requirement applies to "all inmate suits

about prison life."  Porter, 534 U.S. at 532.  This is true whether the claims "involve general

circumstances or particular episodes, and whether they allege excessive force or some other wrong. *Id.*

In their reply brief, Defendants state Plaintiff's testimony that he did not know of the grievance procedure and did not have paper and pen is directly contradicted by the documents he submitted. The detention facility has a single multi-purpose form that inmates use to submit grievances, requests, medical requests, and disciplinary appeals. The inmate simply checks a box indicating what type of issue he is submitting. *Defts' Ex.* 1 to Doc. 60.

Defendants have submitted all multi-purpose documents submitted by the Plaintiff. *Defts' Ex.* 1 to Doc. 60. The documents include two dated April 4th; the day following the incident with Officer Fields. The first document does not have any box checked. Doc. 60 at pg. 6. The Plaintiff's portion of the form and the bottom portion of the form used for the detention center personnel's response are both written in Spanish. *Id.* The next document is also dated April 4th but has the box checked indicating it is a medical request. *Id.* at pg. 7. In total, Plaintiff submitted 42 of the multi-purpose forms for a variety of reasons between April 4th and December 11th.

I agree with Defendants that Plaintiff's testimony is directly contradicted by the documents he submitted during his incarceration at the WCDC. Clearly, Plaintiff had access to the multi-purpose forms and to something to write with. Plaintiff failed to exhaust his administrative remedies with respect to the incident occurring on April 3rd. Nevertheless, to provide a complete record, I will address the remaining arguments raised by the Defendants.

### B. Use of Excessive Force

"Because [Plaintiff] was a pretrial detainee at the time of the alleged violation of his constitutional rights, we analyze [his] claim against [Officer Fields] under the Fourteenth

-8-

Amendment, rather than the Eighth Amendment." Morris v. Zefferi, 601 F.3d 805, 809 (8th Cir. 2010)(citations omitted).

The courts generally analyze excessive force claims of pretrial detainees in the same way as those of arrestees. Andrews v. Neer, 253 F.3d 1052, 1060 (8th Cir. 2001)("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."); see also Hicks v. Norwood, 640 F.3d 839 (2011)(applying Fourteenth Amendment's objective reasonableness standard to claims brought by a pretrial detainee). The use of force must be necessary to some legitimate institutional interest such as safety, security, or efficiency, and the force used must not be in excess of that reasonably believed necessary to achieve those goals. Schoemehl, 878 F.2d at 1048. The relevant inquiry being whether the officials behaved in a reasonable way in light of the facts and circumstances confronting them. See e.g., Wilson v. Williams, 83 F.3d 870, 875 (7th Cir. 1996).

As mentioned above, two short videos of the incident exist. In Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court held that when "opposing parties tell two different stories, one of which is blatantly contradicted" by video evidence contained in the record, "so that no reasonable jury could believe it, a court should not adopt that version of the facts." Id. at 380. In those circumstances, the court should "view[] the facts in the light depicted by the videotape." Id. at 381.

In applying the principles of Scott to this case, the Court can only conclude that no reasonable juror could find that Officer Fields used excessive force. Clearly the language barrier was a factor that contributed to the incident. Plaintiff maintains he did not understand what he was being told over the intercom or what Officer Fields said when he entered the pod. The

videos show Officer Fields used physical force to get Plaintiff into the hallway and then to get Plaintiff handcuffed; they also show that the Plaintiff was resisting Officer Field's effort to take him into the hallway by bracing himself against the wall, with his feet, and then against the door. Even if Plaintiff did not understand a word Officer Fields said, it was clear from Officer Fields' actions that he was attempting to get Plaintiff into the hall. Plaintiff's actions establish that he resisted Officer Fields' efforts to take him into the hall and to handcuff him. Under the circumstances, no genuine issue of material fact exists as to whether Officer Fields responded reasonably.

### C.  Qualified Immunity

Alternatively, Officer Fields maintains he is entitled to qualified immunity. "Qualified immunity is a defense available to government officials who can prove that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Carroll v. Pfeiffer, 262 F.3d 847, 849 (8th Cir. 2001)(quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991)(quoting, Malley v. Briggs, 475 U.S. 335, 343, 341 (1986)). The inquiry is normally one of pure law. J.H.H. v. O'Hara, 878 F.2d 240, 243 (8th Cir. 1989).

The issue of whether a state actor is entitled to the protection of qualified immunity involves a two-step process. See Washington v. Normandy Fire Protection Dist., 272 F.3d 522, 526 (8th Cir. 2001) . First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a

-10-

constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). Second, the court must determine if the right was clearly established. See Washington, 272 F.3d at 256.

Here, as discussed above, viewed in the light most favorable to the Plaintiff, there is no genuine issue of material fact as to whether the evidence shows an objective need for the force used. Because Plaintiff did not comply with orders and his actions in resisting and he resisted, Officer Fields' use of force against Plaintiff was objectively reasonable and does not amount to a constitutional violation. Officer Fields is therefore entitled to qualified immunity. See Hayek v. City of St. Paul, 488 F.3d 1049, 1054 (8th Cir. 2007)("If the allegations and undisputed facts do not amount to a constitutional violation, there is no necessity for further inquiries concerning qualified immunity." (citation omitted)).

### D.  Official Capacity Claims

Finally, Defendants contend there is no basis on which Washington County could be held liable. I agree. "Even had the video shown an excessive use of force, because [Plaintiff] does not attempt to separately prove an unconstitutional municipal policy, '[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability . . . unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.'" Mann v. Yarnell, 497 F.3d 822, 827-828 (8th Cir. 2007)(quoting City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). No such proof exists in this case.

Moreover, Plaintiff's claim that Major Denzer was aware of Officer Fields propensity to use excessive force against inmates is not supported by the evidence. Of the thirty incident reports submitted because Officer Fields used some degree of force, only one resulted in the filing of an inmate grievance.

-11-

AO72A
(Rev. 8/82)

**4.  Conclusion**

For the reasons stated, I recommend that Defendants' motion for summary judgment (Doc. 32) be granted and this case be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of January 2014.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-12-